IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 10-61192-CIV-MOORE/SIMONTON

NIKKI ALLEN, as mother and natural
guardian of R.R.S.,

    Plaintiff,

v.

SCHOOL BOARD OF BROWARD
COUNTY, FLORIDA, COURTNEY O.
DAVIS, individually, and ANGELA
BROWN, individually,

    Defendants.

_____/

## ORDER GRANTING DEFENDANT DAVIS'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant Davis's Motion for Summary Judgment (ECF No. 36), Memorandum of Law in Support of Motion for Summary Judgment (ECF No. 37), Response to Defendant's Motion for Summary Judgment (ECF No. 43), and Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (ECF No. 48).

UPON CONSIDERATION of the Motions, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

I.  **BACKGROUND**[1]

Plaintiff Nikki Allen ("Allen"), as mother and natural guardian of R.R.S.,[2] brings this case pursuant to 42 U.S.C. § 1983 and the United States Constitution, alleging that Defendant Courtney O. Davis ("Davis"), a Behavior Management Specialist at R.R.S.'s school, violated R.R.S.'s rights during an incident that occurred on school premises on May 9, 2008, during which Davis caused R.R.S. to suffer a left elbow lateral condyle fracture.

A.  Pine Ridge Incident

On May 9, 2008, during lunch period, two students became involved in an altercation where one student threw a tray of food on the other. R.R.S., a fourteen year old student of Pine Ridge Education Center[3] ("Pine Ridge"), who was sitting nearby, had no involvement with the altercation. After the altercation, a supervisor told R.R.S. to walk to the other side of his table because the area of the altercation had to be cleaned of food. During the lunch period, students must sit at their assigned tables, which are organized according to grade level. After R.R.S. was told to walk to the other side of the seventh graders' table, R.R.S. went to the eighth grade table

---

[1] The factual background of this case is taken from Defendant Davis's Statement of Undisputed Material Facts in Support of Summary Judgment (ECF No. 38), Plaintiff's Statement of Undisputed Material Facts in Opposition to Defendant's Motion for Summary Judgment (ECF No. 44), and the surveillance videos submitted to the Court. The Court previously discussed the Treatment of Behavior Disorders in Broward Schools and R.R.S.'s History in its Order Granting Defendants' Angela Brown and School Board of Broward County's Motion to Dismiss. (ECF No. 27). The facts are taken in a light most favorable to R.R.S.

[2] R.R.S. had a diagnosis of Bipolar Disorder, Attention Deficit Hyperactivity Disorder, and Oppositional Defiance Disorder as of May 9, 2008. Pl.'s Stat. of Undisputed Mat. Facts (ECF No. 44), ¶ 17.

[3] The Pine Ridge Education Center is an Alternative Discipline Center which assists students who have behavioral and disciplinary problems. Def.'s Stat. of Undisputed Mat. Facts (ECF No. 38), ¶ 3.

2

to ask a classmate for change. It is undisputed that R.R.S. sat at the eighth graders' cafeteria table.[4] Davis claims that he observed R.R.S. show what appeared to be contraband to another student, but R.R.S. claims he was only asking his classmate for change. Davis then approached R.R.S. from behind and grabbed his left arm to escort him out of the cafeteria. Money fell from R.R.S.'s pocket and he went to retrieve it. Video recordings of the incident do not establish whether R.R.S. was resisting Davis. However, the approximate fifteen to eighteen second period from when Davis began to approach R.R.S. until he gained control of him suggests that R.R.S. did not surrender into Davis's custody immediately.[5]

As Davis attempted to restrain R.R.S., R.R.S. became partially bent over a cafeteria table at waist level and his right hand came down on the table. Davis continued to maintain a grip on R.R.S.'s left arm. Davis then pulled R.R.S.'s left arm, which was placed behind his back, in an upwards manner. R.R.S. heard his arm "pop" and endured immediate pain. Davis saw that R.R.S. was in pain, released his arm, and then led R.R.S. to the principal's office. Principal Brown called the paramedics who then took R.R.S. to the hospital. R.R.S. was diagnosed with a left elbow lateral condyle fracture, and he subsequently had surgery on his arm.

B.    Procedural History

On July 12, 2010, Plaintiff filed her Complaint on behalf of R.R.S. See Compl. (ECF No. 1). The Complaint alleged six claims: (1) Davis violated 42 U.S.C. § 1983 and the Fourteenth Amendment by using excessive force and corporal punishment against R.R.S.

---

[4]    There is a dispute as to the length of time that R.R.S. sat at the eighth graders' table. See Pl.'s Stat. of Undisputed Mat. Facts, ¶ 27; Def.'s Stat. of Undisputed Mat. Facts, ¶ 27.

[5]    The Court notes that R.R.S. denies that a struggle occurred. Pl.'s Stat. of Undisputed Mat. Facts, ¶ 42.

(Count I); (2) Davis violated 42 U.S.C. § 1983 and the Fourteenth Amendment by being deliberately indifferent to the danger that R.R.S. would be injured (Count II); (3) Brown violated 42 U.S.C. § 1983 and the Fourteenth Amendment by being deliberately indifferent, as a supervisor, to R.R.S.'s health and safety (Count III); (4) the School Board violated 42 U.S.C. § 1983 and the Fourteenth Amendment by being deliberately indifferent through its policies, practices and customs in failing to properly discipline or restrain school staff (Count IV); (5) the School Board violated 42 U.S.C. § 1983 and the Fourteenth Amendment by failing to properly train its school staff (Count V); and (6) the School Board violated 42 U.S.C. § 1983 and the Fourteenth Amendment for deliberate indifference through continuous and systematic improper placement of R.R.S. (Count VI). The Court dismissed Counts III-VI in its Order Granting Defendants' Angela Brown and School Board of Broward County's Motion to Dismiss. (ECF No. 27).

On January 12, 2011, Defendant Davis filed a Motion for Summary Judgment arguing that there was no constitutional violation and that Davis is entitled to qualified immunity. (ECF No. 36). These issues are now ripe for consideration.

## II.  MOTIONS FOR SUMMARY JUDGMENT

### Standard of Review

The applicable standard for reviewing a summary judgment motion is stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The Judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Summary judgment may be entered only when there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party "may not rest upon the mere allegations of denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

III. ANALYSIS

Substantive Due Process Claims

  1. Qualified Immunity

Allen claims that Davis violated 42 U.S.C. § 1983 and the Fourteenth Amendment by using excessive force and corporal punishment against R.R.S. Davis contends that the allegations do not give rise to a constitutional claim and that he is protected by qualified immunity.

5

To be entitled to qualified immunity, a public official must demonstrate that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Courson v. McMillian, 939 F.2d 1479, 1484 (11th Cir. 1991) (internal quotations and citations omitted). If a public official proves that he was acting within the scope of his discretionary authority, then the burden switches to the plaintiff to demonstrate that qualified immunity is not warranted. Penley v. Eslinger, 605 F.3d 843, 849 (11th Cir. 2010). Courts then ask "in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009) (explaining that the strict sequence of analysis set forth in Saucier is no longer mandatory when determining whether qualified immunity should be granted). Courts also analyze whether that right was "clearly established" at the time of the incident. Id. If the official's conduct violated a constitutional right and that right was "clearly established," then the public official is not entitled to qualified immunity. Id.

        a.      Discretionary Authority

This Court will first determine whether Davis was acting within his discretionary authority during this incident. In analyzing whether an official was acting within the scope of his or her discretionary authority, courts "ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004) (citation omitted). Here, Davis was trained in Professional Crisis Management ("PCM"), which is administered by the Professional Crisis Management

6

Association to assist in handling crisis prevention, de-escalation, and intervention. Def.'s Stat. of Undisputed Mat. Facts (ECF No. 38), ¶ 10. Davis was a behavior specialist who was responsible for supervising students over lunch and to enforce the School Board's rules and procedures.[6] Id. at ¶ 4. During the incident, Davis was supervising the students to establish control over the cafeteria. Id. at ¶ 28. Davis was trained to use the "wrist-tricep" technique. Id. at ¶¶ 10, 35. The "wrist-tricep" technique is a maneuver where a teacher grips the students left arm with his right hand on the student's tricep and left hand on his wrist. Id. at ¶ 35. The purpose of the "wrist-tricep" technique is to use a minimum amount of coercion to escort the student away from a particular location. Id. During the incident, Davis was pursuing a job-related goal of disciplining students for misbehavior and he did so in an authorized manner. Indeed, Davis was a supervisor in the cafeteria and was trained to use disciplinary techniques to intervene when students misbehaved. Thus, it was within Davis's scope of authority as a supervisor at Pine Ridge to use physical force and coercion to remove students from the cafeteria. See Kirkland v. Greene Cnty. Bd. of Educ., 347 F.3d 903, 905, n. 1 (11th Cir. 2003) (noting that a school principal's actions of "disciplining students lies within his general discretionary authority" where "general student discipline" was within his scope of authority); see also J.V. v. Seminole Cnty. Sch. Bd., 2007 WL 7261470, at *7, n. 14 (M.D. Fla. Mar. 21, 2007) (noting "[d]isciplining children certainly falls within the job description of a teacher, and so discipline is usually a discretionary function entitling the teacher to raise the qualified immunity defense") (citing Holloman, 370 F.3d at 1265-67). As such, when Davis disciplined

---

[6] As explained by R.R.S., Davis was not solely responsible for supervising students over lunch. Pl.'s Stat. of Undisputed Mat. Facts, ¶ 4.

R.R.S. by using some level of physical force, he was acting within the scope of his discretionary authority.

              b.      Constitutional Right

This Court will next address whether the alleged facts violate a constitutional right. R.R.S. claims that Davis violated his substantive due process rights under the Fourteenth Amendment. "Officials acting under the color of state law violate the substantive component of the Due Process Clause only when their conduct 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" Peterson v. Baker, 504 F.3d 1331, 1336 (11th Cir. 2007) (citing Cnty. of Sacramento v. Lewis, 523 U.S. 833 (1998)). The Eleventh Circuit has stated that "Section 1983 must not be used as a 'font of tort law' to convert state tort claims into federal causes of action." Id. (citation and internal quotations omitted). However, "in certain circumstances," a cause of action for excessive corporal punishment may result in a violation of a student's substantive due process rights. Neal v. Fulton Cnty. Bd. of Educ., 229 F.3d 1069, 1074 (11th Cir. 2000). "The Due Process Clause protects individuals against arbitrary exercises of government power, but 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla., 610 F.3d 588, 598 (11th Cir. 2010) (citations and internal quotations omitted). "To be arbitrary in the constitutional sense, an executive abuse of power must 'shock the conscience.'" Id. (citation omitted). "Only in the limited context of due-process claims based on excessive corporal punishment has this court held that the intentional conduct of a high-school educator may shock the conscience." Nix v. Franklin Cnty. Sch. Dis., 311 F.3d 1373, 1378 (11th Cir. 2002).

### c. Corporal Punishment

This Court will analyze whether Davis's actions were corporal punishment because that finding "dictates the kind of analysis we must adopt . . . ." Neal, 229 F.3d at 1072. "The touchstone of corporal punishment in schools appears to be the application of physical force by a teacher to punish a student for some kind of school-related misconduct." Id. (citing Ingraham v. Wright, 430 U.S. 651, 661 (1977)). Here, there was an altercation earlier during the lunch period that did not involve R.R.S. Def.'s Stat. of Undisp. Mat. Facts, ¶ 24. R.R.S. was told by a supervisor to move to the other side of his assigned table. Id. at ¶ 25. R.R.S. then walked to a different table and asked another student at that table for change. Pl.'s Stat. of Undisputed Mat. Facts, ¶ 26.

Davis claims that he saw R.R.S. leave his assigned table and show another student what he believed to be contraband. Def.'s Stat. of Undisputed Mat. Facts, ¶ 30. Davis also claims that he walked to R.R.S. while he was sitting down and instructed him to leave twice, commanding the student "walk with me." Id. at ¶ 32. Davis contends that while holding onto R.R.S.'s arm and utilizing the "wrist-tricep" technique, R.R.S. attempted to get away and made a jerking motion, which caused a physical struggle between the two. Id. at ¶¶ 34, 36.

R.R.S.'s version of events is that Davis approached him and grabbed his left arm with one hand. Pl.'s Stat. of Undisputed Mat. Facts, ¶ 34. R.R.S. asserts that he did not move and no struggle took place. Id. at ¶¶ 36, 42. Rather, after grabbing R.R.S. and realizing that he did not feel pain, Davis stated "you don't feel it." Id. at ¶ 40. R.R.S. then bent over a cafeteria table while Davis held onto his left arm behind his back. Id. Davis then intentionally yanked R.R.S.'s arm upwards, causing a "pop" noise and his elbow to break. Id. at ¶¶ 40, 41.

Under either scenario and supported by the video, Davis used "the application of physical force . . . to punish a student for some kind of school-related misconduct." See Neal, 229 F.3d at 1072. The application of force was not to restore order or break-up a fight between R.R.S. and another student. Rather, Davis held onto R.R.S.'s arm and used physical force because he was sitting at a prohibited table, allegedly had contraband, and purportedly would not comply with Davis's orders. By grabbing R.R.S.'s arm and applying a "wrist-tricep" maneuver or placing his arm behind his back on purpose to inflict pain, he was punishing the student for non-compliance. In the video, Davis grabbed R.R.S.'s arm, Davis attempted to gain control of R.R.S. for a short period of time, R.R.S. put his right arm on a nearby cafeteria table, and Davis pulled in an upwards manner on his left arm while it was behind him. Regardless of whether the level of physical discipline was proper in this situation, it was an application of force used to punish R.R.S. for a school-related misconduct. Thus, his actions constitute some level of corporal punishment. See Neal, 229 F.3d at 1072.

          d.     Conduct that Must Shock the Conscience

Davis argues that R.R.S.'s Fourteenth Amendment substantive due process rights were not violated. Corporal punishment alone does not give rise to a substantive due process claim -- it must shock the conscience. See Kirkland, 347 F.3d at 904; Dacosta v. Nwachukwa, 304 F.3d 1045, 1048 (11th Cir. 2002). "Excessive corporal punishment claims have an objective and a subjective component" that a plaintiff must show to prove a school official's liability. Neal, 229 F.3d at 1075, n. 3. "The punishment must objectively be obviously excessive and the teacher must subjectively intend to use that obviously excessive amount of force in circumstances where it was foreseeable that serious bodily injury could result." Id. In Neal, the Eleventh Circuit set

forth an analysis to assist in determining if a person's constitutional rights were violated for excessive corporal punishment. 229 F.3d at 1075. It explained:

> we hold that, at a minimum, the plaintiff must allege facts demonstrating that (1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury.
>
> In determining whether the amount of force used is obviously excessive, we consider the totality of the circumstances. In particular, we examine: (1) the need for the application of corporal punishment, (2) the relationship between the need and amount of punishment administered, and (3) the extent of the injury inflicted.

Id. (internal citations omitted).

The Eleventh Circuit cases that have addressed whether teachers' conduct in schools constitutes conscience-shocking behavior are helpful to review. In Dacosta, a student asked a college professor a question during class, which the teacher ignored. 304 F.3d at 1047. Later during class, the student repeated the question. Id. The teacher ignored the question again, but then proceeded to walk out of the classroom. Id. The student followed behind. Id. The teacher then "darted" back into the classroom. Id. As the student attempted to enter the room, the teacher tried to shut the door. Id. The window in the door shattered as the student put her arm out to protect herself. Id. As a result, the student's arm became lodged in the window pane of the door. Id. The teacher then swung the door several times to push the student away from the door while her arm was still lodged in the glass. Id. The teacher shoved the student's face despite her arm being wedged into the window pane. Id. In its opinion, the Eleventh Circuit reversed the district court for denying qualified immunity to the instructor and held that the facts did not shock the conscience. Id. at 1048-49. In addition, the Eleventh Circuit has determined that mere negligence or deliberate indifference will not amount to a substantive due process

claim under the Fourteenth Amendment even when the injury results in death. See Nix, 311 F.3d at 1378-79 (stating that "courts have not allowed due-process liability for deliberate indifference, and, moreover, will only allow recovery for intentional conduct under limited circumstances"); Davis v. Carter, 555 F.3d 979, 982-84 (11th Cir. 2009) (denying substantive due-process claim because coaches' alleged deliberate indifference resulted in the death of a student did not shock the conscience).

In comparison, the Eleventh Circuit found it conscience-shocking when a high school teacher struck a student in the eye with a weight lock. Neal, 229 F.3d at 1071. In Neal, a teacher hit the student in the eye with a weight lock after learning that the student-plaintiff used it during a fight with another student. Id. After hitting him with the weight lock, the student's eye came completely out of the socket, and he was permanently blind in that eye. Id. Conscience-shocking actions were also found where a teacher struck a student in the head and body with a metal cane for disciplinary purposes causing on-going migraines for the student. See Kirkland, 347 F.3d at 904-05.

The Supreme Court and this Circuit have expressed reluctance to expand due process rights into areas of tort law. See Nix, 311 F.3d at 1377 (stating "[a]s a general matter, the [Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this [uncharted] area are scarce and open-ended.") (quoting Collins v. City of Harker Heights, Texas, 503 U.S. 115, 125 (1992)). Although the injury to R.R.S. is unfortunate, after reviewing the undisputed material facts, Davis's conduct does not shock the conscience and falls well short of the behavior exhibited in

Neal, Kirkland, or Dacosta.[7] R.R.S. has failed to show a conscience-shocking violation of his substantive due process right under the Fourteenth Amendment. See Neal, 229 F.3d at 1075.

R.R.S. argues that this case rises to the conscience-shocking level of Kirkland. There, the court found conscience-shocking behavior where a principal was "[r]epeatedly striking a thirteen-year-old student with a metal cane, including once on the head as he was doubled over protecting his chest, when he was not armed or physically threatening in any manner." 347 F.3d at 905. This case is factually distinguishable from Kirkland. Id.

For the purposes of establishing whether Davis violated R.R.S. substantive due process rights, the Court will analyze the facts in the light most favorable to R.R.S. The Court will also rely on the video. There was a previous altercation between students that did not involve R.R.S., but the teachers and supervisors were attempting to restore order. R.R.S. was instructed to walk to the other side of his assigned table. In doing so, he walked by another table and asked a classmate for change. Davis claims that he saw R.R.S. show another student contraband, but R.R.S. claims he was only asking another student for change. Davis then proceeded to attempt to remove R.R.S. from the cafeteria. Davis grabbed R.R.S.'s left arm. After grabbing his arm, Davis stated, "you don't feel it." As stated above, it is unclear whether R.R.S. resisted, but there was a notable period of time that had passed for Davis to gain control of R.R.S. R.R.S. was then placed against a table where he put his right hand down. Davis had R.R.S.'s left arm behind his

---

[7] The Eleventh Circuit has noted that the age of the plaintiff, a college student, in Dacosta can differentiate it from other cases involving high school students. See Nix, 311 F.3d at 1379, n. 2 (stating "Dacosta differed in some ways from this case: the former case involved an older student in a collegiate setting . . ."). The Court considers the student's age here but it still does not give rise to a constitutional claim given the totality of the circumstances.

back, and Davis then pulled in an upwards fashion on his arm, which resulted in a left elbow lateral condyle fracture and required surgery.

Using these facts for the purpose of this analysis, it is not conscience-shocking. These allegations, even considering R.R.S.'s age, do not rise to the conscience-shocking level of having a professor intentionally swing a door while a student's arm is lodged in the window pane. Dacosta, 304 F.3d at 1047. Moreover, Davis's actions of pulling R.R.S.'s arm under the circumstances in the video are not conscience-shocking and cannot compare to being repeatedly hit in the head, body, and ribs with a metal cane. Indeed, R.R.S. failed to explain how these facts exceed the qualified immunity behavior in Dacosta or the conscience-shocking behavior in Kirkland. See Davis, 555 F.3d at 983 (discussing how Dacosta did not shock the conscience).

In Neal, the Eleventh Circuit cited to London v. Directors of the Dewitt Public Schools in its discussion of the factors to consider when analyzing whether excessive corporal punishment rises to conscience-shocking behavior. Neal, 229 F.3d at 1075; London, 194 F.3d 873 (8th Cir. 1999). The facts of London are similar to this case. 194 F.3d at 875. In London, the plaintiff, a middle school student, was engaged in "horseplay" in the cafeteria with another student. Id. A teacher at the school told them both to leave the cafeteria. Id. The plaintiff-student told the teacher that he was going to finish his breakfast. Id. The teacher told the student to leave again. Id. The student told the teacher that he would "get his books." Id. The teacher then put his hands on the student to remove him from the cafeteria and the two began to fight with one another. Id. During the struggle, the teacher "dragged [the student] on the floor for approximately fifteen feet and then banged [his] head against a metal pole outside of the cafeteria." Id. The Court concluded that "[t]aken as a whole, we agree with the District Court

14

that . . . [the] actions were not shocking to the conscience. This is not the kind of truly egregious and extraordinary case for which the theory of substantive due process is properly reserved." Id. at 877 (internal citation omitted). Similarly, the actions in this case do not warrant a substantive due process claim.

Under the first part of the analysis provided in Neal, courts analyze whether the amount of force was obviously excessive under the circumstances. R.R.S. has alleged that Davis intentionally pulled his arm to injure him. While this point is in contention, the Court will view the facts in the light most favorable to R.R.S. Even if he intentionally pulled on R.R.S.'s arm, his actions were not objectively obviously excessive given the totality of the circumstances. It is important to address the sequence of events that led to this incident to gain a full understanding of the totality of the circumstances.

First, the teachers were attempting to restore order in the cafeteria after an earlier incident. R.R.S. disobeyed orders by sitting at a cafeteria table where he was not supposed to be seated. It was within Davis's discretionary authority to escort R.R.S. out of the cafeteria for violating the rules, even if that required some level of physical force. Furthermore, the video shows that it took a brief period of time for Davis to gain control of R.R.S. Once he did gain control, R.R.S. placed his right hand on a table. At that time, Davis pulled upwards on R.R.S.'s arm while it was behind his back. The whole encounter occurred within a matter of approximately fifteen to eighteen seconds. Given the totality of the circumstance, it was reasonable to use some level of corporal punishment.

Second, it does not appear that the amount of corporal punishment that Davis applied was sufficiently excessive given its need. When Davis initially grabbed R.R.S.'s arm to escort him

15

out of the cafeteria, it was not excessive. The surveillance video shows that the amount of force used to control R.R.S. increased as the incident escalated. As such, Davis did not apply an excessive amount of force to R.R.S.'s arm. The pulling on R.R.S.'s arm was noticeable on the video, but not the egregious behavior required to reach a substantive due process violation. In addition, once Davis saw R.R.S. was injured, he released his arm.[8] Thus, it was not obviously excessive given the circumstances.

Third, the extent of the injury inflicted was a left elbow lateral condyle fracture. The injuries were serious. This factor is important in weighing whether a substantive due process claim exists, but severity alone will not give rise to a constitutional violation. Given the entirety of the situation, it does not shock the conscience.

The next analysis is whether Davis intentionally used obviously excessive force. R.R.S. has alleged that Davis intended to seriously injure him and relies on Davis's purported statement "you don't feel it" for support. Accepting these allegations for this analysis, his behavior does not constitute the malicious, egregious, and conscience shocking actions required by this Circuit even if it was intentional. Assuming that he did use that amount of force intentionally and made such a statement, the manner in which Davis pulled on R.R.S.'s arm was forceful, but not to the level of conscience-shocking. This also affects the foreseeability of R.R.S.'s injuries. Davis's arm pulling could foreseeably cause pain and discomfort, but not a serious bodily injury.

While pulling R.R.S.'s arm may constitute a state tort and the resulting injury is unfortunate, it is not the behavior by a teacher that has led to the level of constitutional violations

---

[8]   R.R.S. testified in his deposition that once he was injured, Davis released his arm and "then asked me what's wrong and took me outside the room." See (ECF No. 39-1), page 58, line 14.

16

for excessive corporal punishment. The amount of force in this case is distinguishable from cases cited by R.R.S. where students were hit with a metal cane in the head, thrown by the neck head first into a locker, held in the neck area causing a student to lose consciousness, resulting in fractured teeth and a broken nose, or blinded due to a teacher hitting a student with a metal lock. See Kirkland, 347 F.3d at 904-05; P.B. v. Koch, 96 F.3d 1298, 1300 (9th Cir. 1996); Metzger v. Osbeck, 841 F.2d 518, 519-20 (3d Cir. 1988); Neal, 229 F.3d at 1071. It is more in accordance with London, which did not result in a substantive due process violation. 194 F.3d at 878. Finding that where there is no substantive due process violation, there is no need to address whether the right was "clearly established."

As such, using the analysis provided in Neal, R.R.S.'s allegations do not show that Davis's acts were unconstitutional, and he is entitled to qualified immunity. Accordingly, Davis's Motion for Summary Judgment should be granted as to Count I.

    2.    Deliberate Indifference

R.R.S.'s theory in Count II attempts to bring a substantive due process claim for Davis's deliberate indifference in causing R.R.S's injury. Specifically, R.R.S. claims that when Davis intentionally yanked his arm, he was deliberately indifferent that such action would break it and that he ignored the school's policies against such action. Davis argues that R.R.S.'s claim for deliberate indifference should be dismissed. In doing so, Davis purports that he was not deliberately indifferent to R.R.S.'s serious medical needs. Davis contends that he quickly brought him back to the principal after he observed that R.R.S. was injured.

Count II merely asserts a second due process claim against Davis for the excessive corporal punishment that R.R.S. alleged in Count I. Count II even incorporates the facts claimed

in Count I. It is essentially a mere extension of Count I but supplements deliberate indifference for Davis's mens rea.

As stated above, a claim asserting deliberate indifference under these circumstances is more suited for a state tort, not a constitutional claim. See Nix, 311 F.3d 1377 (explaining that "specifically, in a classroom setting, courts have not allowed due-process liability for deliberate indifference, and, moreover will only allow recovery for intentional conduct under limited circumstances"). Thus, applying a theory of deliberate indifference in Count II for Davis's actions does not give rise to a substantive due process violation under the Fourteenth Amendment and Davis is entitled to qualified immunity. Accordingly, the Motion for Summary Judgment should be granted as to Count II.

## IV.   CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant Davis's Motion for Summary Judgment (ECF No. 36) is GRANTED. Counts I and II of the Complaint are dismissed. The Clerk of the Court is instructed to CLOSE this case. All other motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 2nd day of March 2011.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record